IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE SANTOS,<br><br>                Petitioner,<br><br>     vs.<br><br>JEFFREY BEARD, Secretary, California Department of Corrections and Rehabilitation,<br><br>                Respondent. | No. 2:14-cv-00836-JKS<br><br>MEMORANDUM DECISION |

Jamie Santos, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Santos is in the custody of the California Department of Corrections & Rehabilitation and incarcerated at LaPalma Correctional Center in Arizona.  Respondent has answered, and Santos has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

On January 13, 2010, Santos was charged with various public offenses after he fled the scene when an officer approached his parked car and demanded that he get out.  Through appointed counsel, Santos moved to suppress evidence from the incident on the ground that he was subject to a constitutionally unreasonable temporary detention.  On direct appeal, the Court of Appeal described the following facts underlying the suppression motion as well as the preliminary examination the trial court held to consider it:

> Twin Rivers Police Officer Justin Stanley was on duty, in uniform, and driving a patrol car on the evening of January 9, 2010.  His car was marked "police" and was equipped with a siren, overhead lights, and a red and blue light bar on top.  He was on patrol alone in a residential area near Hamilton Street Park where illicit activity had occurred, including drug sales, trespassing and vandalism, and where neighbors had

reported parked cars that did not belong in the area.  One of Officer Stanley's duties was to lock the exterior gates of the park after it closed at dusk.

Officer Stanley saw a white Chevy pickup parked five feet from the park and facing the open gates.  The pickup's engine and headlights were off, the driver's window was rolled up, the dome light was on, and [Santos], the sole occupant, was sitting in the driver's seat looking down toward his lap.  Officer Stanley made a U-turn, parked seven to 10 feet behind the pickup, and illuminated the truck with his white spotlight.

Officer Stanley wanted to do a welfare check and ensure there was no illicit activity.  The officer approached the truck on the driver's side, noting that the window had been rolled down.  The pickup engine was still off.  Officer Stanley asked [Santos], "[H]ey man, what's up" and "what's going on."  Officer Stanley did not have a weapon or night stick in his hand.  Showing the officer a disposable camera, [Santos] said he was looking at the photos and trying to decide which ones to develop.  Officer Stanley asked [Santos] where he lived and what he was doing there.  [Santos] replied that he lived with family members on Taylor Street, which the officer knew was one-half mile away.  Less than a minute into the contact, the officer asked for identification.  [Santos] claimed that he either did not have a driver's license or that his license was somewhere in the car but never produced one.  The officer asked for any other form of identification.  [Santos] produced a credit card and also provided his date of birth in response to the officer's request.  Officer Stanley returned the credit card to [Santos] and asked whether [Santos] minded if he "r[a]n [his] name."  [Santos] asked "what for" and said he had not done anything wrong.  The officer walked back to his patrol car.  The officer did not draw a weapon, tell [Santos] that he was not free to leave, or activate his overhead red and blue lights or siren.  The officer conducted a criminal records check and learned that [Santos] had a criminal history and was on searchable probation.  About this time, two other officers in another vehicle arrived to help lock up the park.

Officer Stanley and one of the other officers approached the driver's side of the pickup.  The driver's window was now partially rolled up.  [Santos] rolled the window all the way up and started the truck's engine.  The officers ordered [Santos] to stop and to get out.  Instead, [Santos] fled the scene.  Officers pursued [Santos] for more than five miles with their overhead red and blue lights and sirens activated.  No further evidence was adduced on the suppression motion.

The prosecutor argued the interaction was not a temporary detention but instead a consensual encounter.  [Santos] attorney argued the encounter constituted a temporary detention for purposes of interrogation, and that [Santos] was not free to leave.

The magistrate denied the suppression motion, noting that [Santos'] reliance upon cases where the driver had been pulled over were inapplicable because [Santos] was already parked.  The magistrate ruled the contact was "not a detention" but instead a consensual encounter, noting that an officer could walk up to anyone on the street or in a parked car and "engage in a conversation."  The magistrate concluded that the officer could ask for identification because [Santos] appeared to have driven to the location since he was the only one in the car.  The magistrate noted that [Santos] lacked a driver's license, a Vehicle Code violation.  After obtaining [Santos'] credit card and returning it to him, the officer walked back to his patrol car.  The court determined that [Santos] was

> free to leave at that point but did not do so. The magistrate also determined that the officers could lawfully conduct a probation search after the officer learned [Santos] was on searchable probation.
>
> The court-appointed attorney who made the suppression motion at the preliminary examination was subsequently relieved and newly retained counsel did not seek to suppress the evidence after [Santos] was held to answer.

*People v. Santos*, No. C069518, 2013 WL 600197, *1-2 (Cal. Ct. App. Feb. 19, 2013).

On September 6, 2011, a second amended information was filed in the Sacramento County Superior Court charging Santos with assault with a deadly weapon upon a peace officer (count 1); evading a peace officer's motor vehicle (count 2); evading a peace officer by driving a vehicle in a direction opposite to the flow of traffic (count 3); possession of morphine (count 4); misdemeanor possession of a loaded firearm (count 5); and misdemeanor possession of the controlled substance of diazepam (count 6). The information further alleged a prior felony conviction as both a strike and as a serious felony.

On September 6, 2011, Santos proceeded to jury trial. On the sixth day of trial, the jury found Santos guilty of all six charged counts. Because Santos waived a jury on the prior conviction allegations, the trial court held a bench trial on those and found them both to be true. The trial court subsequently denied Santos probation and sentenced him to an aggregate prison term of 13 years, consisting of 4 years for the assault on a peace officer conviction (count 1), doubled to 8 years by the strike, and a consecutive 5-year term for the prior serious felony conviction enhancement. The court imposed concurrent terms on counts 2 and 4, stayed the

3

sentence on count 3 pursuant to California Penal Code § 654,[1] and sentenced Santos to time served on the misdemeanor convictions in counts 5 and 6.

Through counsel, Santos appealed his conviction, arguing that his trial counsel's failure to renew the motion to suppress after the preliminary hearing constituted ineffective assistance of counsel. On February 19, 2013, the Court of Appeal issued a reasoned, unpublished opinion rejecting that claim. *Santos*, 2013 WL 600197, *3-5. It ordered the trial court to correct a clerical error in the abstract of judgment but otherwise affirmed Santos' judgment. *Id.* at *5. Santos petitioned the California Supreme Court for review, which was denied without comment on May 15, 2013.

Santos timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on March 28, 2014.

## II. GROUND/CLAIM

In his *pro se* Petition before this Court, Santos raises the sole claim that he raised before the state courts on direct appeal: that trial counsel was ineffective for failing to renew his suppression motion.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[1] Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." CAL. PENAL CODE § 654.

Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state

5

court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Santos argues, as he did on direct appeal, that his trial counsel rendered ineffective assistance by not renewing the motion to suppress evidence after the prosecution was held to answer. Santos contends that a renewed motion should have been made and granted because his Fourth Amendment right against unreasonable searches and seizures was violated. According to Santos, he was unlawfully detained "[b]ecause Officer Stanley had no articulable suspicion of wrongdoing and a person in [his] position would not have felt free to leave while his information was checked."

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Santos must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

7

To assess whether counsel was deficient in failing to renew the suppression motion, and whether Santos was prejudiced by counsel's failure, this Court must consider whether a renewed suppression motion would have been successful. The Court of Appeal answered that question in the negative, reasoning:

> There are three types of police contact. The first type is a "'consensual encounter'" which requires no objective justification and in which there is no restraint on a person's liberty. The second type, a detention, "involves a seizure of the individual for a limited duration and for limited purposes" and is acceptable "'if there is an articulable suspicion that a person has committed or is about to commit a crime.'" The third type, an arrest, requires probable cause.
>
> During a consensual encounter, an officer may ask about the contents of a person's pockets, ask for identification, and even ask the person to submit to a search. In determining whether compliance was voluntary, the manner or mode of the request is considered. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' [citation] the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature."
>
> An objective test applies in determining whether a seizure has occurred. The issue is whether the officer's words and actions conveyed to a reasonable person that he was being ordered to restrict his movement. We accept the magistrate's express or implied findings when supported by substantial evidence and determine independently whether the search or seizure was reasonable.
>
> [Santos] quotes a comment by the magistrate out of context. He notes that the magistrate said at one point, "would the average person drive away? I'll be honest with you, probably not . . . ." [Santos] argues the magistrate's comment amounted to a finding that a reasonable person in [Santos'] position would not have felt free to leave, but the trial court then applied the wrong standard in ruling there was no detention.
>
> The entire statement by the magistrate, however, was as follows:
>
> > "THE COURT: All right. The motion is denied. Counsel, it's not a detention. An officer can walk up to any one of us on the street or up to a parked car and engage in a conversation. Case law is very clear on that point. [¶] He asks for ID. One could argue circumstantially that [Santos], with no one else present in the car, drove to that location. The officer could inquire for ID. [Santos] doesn't have a driver's license. Arguably he is in violation of the Vehicle Code at th[at] point. Nonetheless, the officer returns his credit card to him, and walks away. [¶] Now, he didn't, and would the average person drive away? I'll be honest with you, probably not, but that does not mean that they are not using their legal rights to have done so at that point."

8

>   The entire quote, in context, conveys the trial court's conclusion that the officer's specific words and actions would not have conveyed to a reasonable person that the officer was ordering the person to restrict his movement.
>   Here, the magistrate impliedly found that [Santos] had not been subject to any form of restraint by Officer Stanley and expressly found that [Santos] was free to drive away when the officer returned to his patrol car to run the criminal records check. Substantial evidence supports both findings. [Santos] was not pulled over, he was already parked. As the magistrate noted, it was "no different than if [Santos] were seated at a park bench" or "standing on the sidewalk and leaning against his car."
>   Citing several cases in which an officer used a spotlight, [Santos] argues the officer's use of his spotlight here rendered the encounter a detention because a reasonable person would have believed that he was not free to leave, decline the officer's request or terminate the encounter. But as defendant acknowledges, the court in *People v. Perez* (1989) 211 Cal.App.3d 1492 held that the mere use of a spotlight is not sufficient to cause a person to believe his freedom of movement has been restrained. "While the use of high beams and spotlights might cause a reasonable person to feel himself the object of official scrutiny, such directed scrutiny does not amount to a detention."
>   Although the officer here used his spotlight, he did not use his emergency lights, that is, his red and blue lights. The officer parked behind [Santos] and did not block his path. The officer approached and asked [Santos], "what's up" and "what's going on." The officer was speaking casually with [Santos] instead of commanding a response. The officer did not draw his weapon or nightstick. [Santos] showed the officer a disposable camera and said he was trying to decide which photos to develop. The officer asked where [Santos] lived. When [Santos] said he lived on a certain street which the officer knew was about one-half mile away, the officer asked for identification and [Santos'] date of birth. [Santos] was unable to produce a driver's license. As the trial court noted, driving without a license is a Vehicle Code violation. Instead, [Santos] produced a credit card which the officer returned to [Santos] before the officer walked back to his patrol car to conduct a criminal records check. [Santos] voluntarily answered the officer's questions and provided his credit card and date of birth. Running a records check is not a seizure. We agree with the magistrate's conclusion that the initial interaction was a consensual encounter. Once the officer learned that [Santos] had possibly committed a Vehicle Code violation by driving without a license, the officer could reasonably detain [Santos].
>   [Santos'] counsel was not asked to explain his decision not to renew the suppression motion in the trial court, but there is a satisfactory explanation: the motion lacked merit. [Santos] has not established ineffective assistance of counsel.

*Santos*, 2013 WL 600197, at *3-5 (citations omitted).

Santos cannot prevail on federal habeas review either. California law, as described by the Court of Appeal, comports with federal law with respect to consensual encounters. Like

9

California law, federal law mandates that "[t]he government may stop and question any individual for any reason as long as the person to whom questions are put remains free to disregard the questions and walk away." *United States v. Arias-Villanueva*, 998 F.2d 1491, 1501 (9th Cir. 1993) (citing *United States v. Mendenhall*, 446 U.S. 544, 555 (1980)). A "seizure" occurs only when an officer restrains the liberty of an individual, either by means of physical force or show of authority. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). After hearing argument and testimony, the state trial court found that Officer Stanley's initial interaction with Santos was a consensual encounter and his subsequent attempt to detain Santos was reasonable. Because those factual findings are supported by the record, which contains no evidence that Officer Stanley used physical force or other coercive tactic and reflects that Santos, sitting alone and in the driver's seat, was unable to produce his driver's license, Santos fails to establish by clear and convincing evidence that the state courts' factual findings were erroneous. *See* 28 U.S.C. § 2254(e)(1). Accordingly, the state courts' determination that a suppression motion would have been futile neither contravenes or unreasonably applies federal law. Indeed, the strong presumption that counsel's conduct fell within the wide range of reasonable representation is bolstered by the Court of Appeal's determination that such a motion would have been futile. Failure to raise a meritless argument is not ineffectiveness, and a petitioner cannot establish that he was prejudiced by such failure. *See Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2008); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985).

Moreover, it should also be noted that Santos has already received relief from his trial counsel's alleged error in failing to renew the suppression motion. As the Court of Appeal noted, Santos' claim that his suppression motion had been erroneously denied would ordinarily

not be subject to review on appeal under California procedural rules that require an unsuccessful suppression motion made at a preliminary examination before a magistrate judge to be renewed before the superior court. *Santos*, 2013 WL 600197, at *2 (citing *People v. Richardson*, 67 Cal. Rptr. 3d 552, 555-566 (Cal. Ct. App. 2007)). The practical effect of counsel's renewal of the suppression motion is therefore only preservation of appellate review. Here, however, the Court of Appeal, in assessing the corresponding ineffective assistance claim, nonetheless analyzed the merits of the underlying suppression motion. Santos therefore received the appellate review that counsel otherwise forfeited.

Furthermore, to the extent Santos' *pro se* Petition may be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), to raise the underlying Fourth Amendment claim before this Court, such claim is foreclosed on federal habeas review. Under *Stone v. Powell*, 428 U.S. 465 (1976), "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. The Ninth Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See Moormann v. Schiro*, 426 F.3d 1044, 1053 (9th Cir. 2005). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Oritz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). California provides such an opportunity. *See* CAL. PENAL CODE § 1538.5; *Gordan v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990). Indeed, the record reflects that the state trial court held a hearing at which defense counsel was afforded the opportunity to be heard, and the underlying claim was briefed before and thoroughly considered

by the California Court of Appeal, which issued a reasoned decision rejecting the claim on its merits.  Santos therefore is not entitled to relief in any event.

## V. CONCLUSION AND ORDER

Santos is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 10, 2015.

                                               /s/James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                            Senior United States District Judge